UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRELL L. TAYLOR, 04-B-0483,

                 Petitioner,

        -v-                                    06-CV-0760(MAT)
                                               **ORDER**
THOMAS M. POOLE, Superintendent
of Five Points Correctional Facility,

                 Respondent.

_____


## I.   Introduction

     Petitioner Darrell Taylor ("petitioner") filed this *pro se*
petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging his conviction on February 17, 2004, of Gang Assault
in the First Degree (N.Y. Penal L. § 120.07)), and Assault in the
First Degree (Penal L. § 120.10[1]). Following a jury trial in
Genesee County Court before Judge Robert Noonan, petitioner was
sentenced as a second violent felony offender to concurrent,
determinate terms of imprisonment of twenty-five years and five
years of post-release supervision. Sentencing Tr. at 21-22.

## II.  Factual Background and Procedural History

     On the morning of January 25, 2003, in Batavia, New York,
petitioner and two accomplices[1] entered a home where James Wilcox

_____

     [1] William Robinson (a/k/a "Warrior") was convicted of two counts of
second-degree burglary, and one count each of first-degree gang assault and
first-degree assault on November 6, 2003, and thereafter filed a direct
appeal. At the time of petitioner's trial, Warrior's appeal was pending. The
Appellate Division, Fourth Department, unanimously affirmed his judgment of
conviction. People v. Robinson, 24 A.D.3d 1262 (4th Dept. 2005); lv. denied, 6
N.Y.3d 837 (2006).  The third man was never identified.

("the victim") was visiting his friend Marcia Weber ("Weber") and beat him with a baseball bat and a hammer while he sat and worked on a crossword puzzle. The victim suffered serious physical injuries that required him to spend several days in the hospital and left him with long-term vision impairment.

Petitioner was charged in Genesee County with Gang Assault in the First Degree (N.Y. Penal L. § 120.07), Assault in the First Degree (Penal L. § 120.10[1]), and two counts of Burglary in the First Degree (Penal L. § 140.30[2], [3]). Following a jury trial, petitioner was found guilty of the assault charges and acquitted of the burglary charges. Trial Tr. 591. He was sentenced as a second violent felony offender to two concurrent, determinate terms of imprisonment of twenty-five years, and five years of post-release supervision. Sentencing Tr. 21-22.

Through counsel, petitioner filed an appellate brief raising six grounds: (1) the evidence was legally insufficient to support petitioner's convictions and the verdict was against the weight of the evidence; (2) the trial court erred in denying petitioner's motion to dismiss the case; (3) the trial court's partial denial of his Sandoval motion was improper; (4) the trial court improperly admitted into evidence of photograph of the victim; (5) the trial court erred in failing to charge third-degree assault as a lesser-included offense; and (6) the sentence was "cruel and inhumane." See Petitioner's ("Pet'r") Appellate Br. 2-44. In a supplemental

*pro se* brief, petitioner claimed that he was denied effective assistance of trial counsel and also alleged a confrontation clause violation. <u>See</u> Pet'r Supplemental Br. 2-22. The Appellate Division, Fourth Department, unanimously affirmed petitioner's judgment of conviction, dismissing petitioner's claims on procedural grounds as well as on the merits. <u>People v. Taylor</u>, 19 A.D.3d 1100 (4th Dept.); <u>lv. denied</u> 5 N.Y.3d 810 (2005).

On March 5, 2005, petitioner filed a motion for *vacatur* pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10 on the basis of newly-discovered evidence. Petitioner produced an affidavit signed by his co-defendant, William Robinson, which purportedly exonerated petitioner. <u>See</u> Mot. dated 3/5/2005; Respondent's ("Resp't") Ex. J. The Genesee County Court denied petitioner's motion. <u>See</u> Decision and Order, No. 4575, dated 4/8/2005; Resp't Ex. K. Leave to appeal that decision was denied by the Fourth Department on November 28, 2005. Resp't Ex. N.

Petitioner then filed a timely petition for habeas corpus pursuant to 28 U.S.C. § 2254, alleging nine grounds for relief: (1) ineffective assistance of trial counsel; (2) a violation of petitioner's Sixth Amendment right to confrontation; (3) actual innocence; (4) the trial court erred in denying petitioner's motion to dismiss the case against him; (5) improperly admitted evidence; (6) the trial court erred when it refused to charge third-degree assault as a lesser-included offense; (7) insufficiency of the

evidence; (8) the sentence is "cruel and inhumane"; and (9) the trial court improperly ruled on petitioner's <u>Sandoval</u> motion. For the reasons that follow, the petition for writ of habeas corpus is denied and the action is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. <u>See</u> 28 U.S.C. § 2254(d)(1), (2); <u>Williams v. Taylor</u>, 529 U.S. 362, 375-76 (2000).

#### 2. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see</u>, <u>e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord</u>, <u>e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion

requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).[2]

### 3. Adequate and Independent State Grounds Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to *bar consideration* on federal habeas of federal claims that have been defaulted under state law,'" id. (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the

---

[2] The respondent notes that petitioner has satisfied this requirement. Resp't Mem. at 11 (Dkt. #13).

procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

## B.  Merits of the Petition

### 1.  Ineffective Assistance of Counsel (Ground One)

Petitioner asserts that he received constitutionally ineffective assistance of counsel because his trial attorney committed the following errors: (1) he failed to conduct a pre-trial investigation of petitioner's case; (2) he failed to challenge the composition of the jury venire; and (3) he failed to call petitioner's co-defendant, William Robinson(a/k/a "Warrior") as a witness.  Petition ("Pet.") ¶ 21(A). (Dkt. #1). Petitioner presented this claim to the Appellate Division in a supplemental *pro se* brief, which held that the claim had no merit. Taylor, 19 A.D.3d at 1100.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by

an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. Therefore, to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's performance was so objectively unreasonable that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

On the outset, I note that petitioner's attorney, whose efforts resulted in petitioner's acquittal of two counts of burglary, provided commendable performance. Nonetheless, petitioner asserts that his attorney failed to conduct an adequate pre-trial investigation. Specifically, that defense counsel did not interview petitioner's co-defendant, Warrior, in preparation for petitioner's trial. Pet. ¶ 21(A)(1); Pet'r Supplemental Br. 10-14. According

to petitioner, Warrior would have helped petitioner's defense because Warrior purportedly absolved petitioner of any responsibility for the crimes in an affidavit executed on November 3, 2004, nearly a year after petitioner's trial ended. <u>See</u> Resp't Ex. J.

The record does not indicate whether counsel interviewed Warrior in advance of petitioner's trial. Assuming, *arguendo*, he did not, there is nothing to suggest that Warrior's testimony would have assisted in petitioner's defense. Nothing in the record indicates that, at the time of petitioner's trial, counsel had reason to believe that Warrior was able and willing to exonerate petitioner. Months earlier, Warrior testified at his own trial, in which he mounted a defense of mistaken identity, alleging that he was not present at the scene of the assault. <u>See</u> Resp't Ex. K at 5. Thus, counsel would have had no reason to believe that Warrior was prepared to testify at petitioner's trial that he alone [Warrior] attacked the victim, as he later asserted in the affidavit of November 3, 2004. In any event, because Warrior's appeal was pending at the time of petitioner's trial, Warrior could have still exercised his Fifth Amendment privilege against self-incrimination if called to testify at petitioner's trial. <u>See</u> <u>People v. Shannon</u>, 207 A.D.2d 727, 728 (1st Dept. 1994); <u>People v. Chambers</u>, 184 A.D.2d 716, 717-18 (2d Dept. 1992).

For the same reason, counsel cannot be faulted for failing to

call Warrior as a witness. Petitioner has not shown that there is a reasonable probability that summoning Warrior to testify would have changed the outcome of petitioner's trial. <u>Strickland</u>, 466 U.S. at 694.

Petitioner's claim that his attorney was deficient for failing to object to the jury venire on the ground that ever member thereof was white, is also meritless. "[T]he Sixth Amendment requires that jury panels be drawn from a source representing a 'fair cross section' of the community in which the defendant is tried." <u>U.S. v. Jackman</u>, 46 F.3d 1240 (2d Cir. 1995) (quoting <u>Taylor v. Louisiana</u>, 419 U.S. 522, 536 (1975)). "[T]his fair cross section requirement applies only to the large jury pool involving the source of the jurors and not to the trial petit jury. <u>Concepcion v. U.S.</u>, 181 F.Supp.2d 206, 226 (E.D.N.Y. 2002) (citing <u>Taylor</u>, 419 U.S. at 538) ("A defendant is not entitled to a jury of any particular composition"). Put another way, the Sixth Amendment guarantees only that the defendant will have the *possibility* of a jury that reflects a fair cross-section of the community. <u>Roman v. Abrams</u>, 822 F.2d 214, 229 (2d Cir 1987).

To establish a *prima facie* case of a viable "fair cross section" claim under the Sixth Amendment, the petitioner must demonstrate that the under-representation of the racial the group claimed to be excluded is the result of "systematic exclusion of the group in the jury selection process." <u>Duren v. Missouri</u>, 439

U.S. 357, 364 (1979).[3]  Moreover, under the Equal Protection
Clause, the petitioner also bears the burden of showing that the
selection procedure is not racially neutral, i.e., is the result of
intentional discrimination by the state. Alston v. Manson, 791 F.2d
255, 258 (2d Cir. 1986); Castaneda v. Partida, 430 U.S. 482, 494-95
(1977) (In order to show that equal protection violation has
occurred in context of grand jury selection, defendant must show
that procedure employed resulted in substantial underrepresentation
of his race or of identifiable group to which he belongs.)

Here, petitioner merely contends that he was tried by an "all
white jury", and "not one black or African American was included in
the pool of prospective jurors," which was "significant" given the
racial makeup of Genesee County.  Traverse at 13.  (Dkt. #19). This
unsubstantiated assertion alone, however, is insufficient to show
that the jury selection process as a whole systematically excluded
black jurors, or that the juror selection procedure was the result
of intentional discrimination.  Petitioner's contention is simply
too vague to provide a basis for a claim of ineffective assistance
of trial counsel. See, e.g. Snitzel v. Murry, 371 F.Supp.2d 295,
305 (W.D.N.Y. 2004) ("[Petitioner's] claims of ineffective

---

[3] "In order to establish a *prima facie* violation of the
fair-cross-section requirement, the defendant must show (1) that the group
alleged to be excluded is a "distinctive" group in the community; (2) that the
representation of this group in venires from which juries are selected is not
fair and reasonable in relation to the number of such persons in the
community; and (3) that this underrepresentation is due to systematic
exclusion of the group in the jury-selection process." Duren, 439 U.S. at 364.

assistance of counsel are based entirely upon vague, unsubstantiated assertions of error. [He] has not come close to demonstrating that his counsel performed deficiently, let alone that he suffered prejudice as a result.")

In reviewing the entire record, I find that the alleged errors by trial counsel, considered independently and collectively, do not amount to constitutionally ineffective assistance. The Appellate Division did not unreasonably apply the standards set forth in Strickland v. Washington in rejecting petitioner's claim of ineffective assistance of trial counsel. This claim is therefore dismissed.

### 2. Confrontation Clause Violation (Ground Two)

Petitioner avers that the admission of a one-page document entitled "Emergency Department Nursing Triage Form" ("Triage Form") from the United Memorial Medical Center, where the victim sought treatment after the assault, violated petitioner's rights under the Confrontation Clause. Pet. ¶ 21(B). The Appellate Division ruled that petitioner's claim was without merit. 19 A.D.3d at 1100.

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that a prior testimonial statement made by a declarant who does not testify at trial may not be admitted into evidence unless the declarant is unable to testify and the defendant had an earlier opportunity to cross-examine the defendant. Crawford, 541 U.S. at 59-60. According to petitioner, the contents of Triage

Form, stating that three individuals had attacked the alleged victim with a hammer and baseball bat, should have been excluded from evidence because "[t]he maker of the report was not made available for cross-examination." Pet. ¶ 21(B)(2).

First, nothing in the record indicates who the "maker" of the Triage Form was. Presumably, the victim gave the information to hospital personnel when he was interviewed in the Emergency Room. <u>See</u> Pet'r Appellate Br. at 9 ("[The victim] was examined at the hospital . . . at 1:15 am after he advised the ER that he'd been 'assaulted by men with a hammer and baseball bat.'"). In that instance there can be no Confrontation Clause violation because the victim, who made the statement, was clearly available to testify at trial and petitioner had a full and fair opportunity to cross-examine him. In any event, petitioner has not established that the statements made to hospital staff in furtherance of seeking care at the emergency room were testimonial in nature.[4] <u>See</u> <u>Johnson v. Artus</u>, No. 05 Civ. 8960(RMB)(DCF), 2008 WL 612619 at *3 (S.D.N.Y. 2008).

Moreover, petitioner's assertion that the Triage Form was used

---

[4] The Supreme Court expressly declined to "spell out a comprehensive definition of 'testimonial,'" but provided examples of those statements at the "core" of the definition; these include prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations. <u>Crawford</u>, 541 U.S. at 51, 68. As the Second Circuit has observed, the types of statements cited by the <u>Crawford</u> court as "testimonial" share certain characteristics–"they all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings." <u>U.S. v. Saget</u>, 377 F.3d 223, 228 (2d Cir. 2004) (citing <u>Crawford</u>, 541 U.S. at 53 n.4).

"to support the prosecutions [sic] case at summation," is belied by the record. The Triage Form was not mentioned during summation. T. 530-31.

Because the Appellate Division's ruling did not run afoul of the strictures of <u>Crawford v. Washington</u>, this claim is dismissed.

### 3. **Legally Insufficient Evidence (Ground Seven)**

Petitioner contends that the prosecution's evidence was legally insufficient to prove that he caused serious physical injury to another person, an element of both Gang Assault in the First Degree (Penal L. § 120.07) and Assault in the First Degree (Penal L. § 120.10[1]). Pet. ¶ 21(G), Traverse at 1-10. The Appellate Division dismissed this claim in part on procedural grounds and in part on the merits:

> Defendant's motion to dismiss was directed only at the charge of assault in the first degree, and thus defendant failed to preserve for our review his present challenge to the legal sufficiency of the evidence with respect to the conviction of gang assault. Contrary to defendant's further contentions, the evidence is legally sufficient to support the conviction of assault in the first degree . . .

19 A.D.3d at 1100 (citations omitted).

Petitioner failed to preserve the legal insufficiency issue[5] for appellate review as to the gang assault charge, and the issue

---

[5] Under New York law, a defendant must specifically identify the alleged deficiency in the prosecution's proof in his motion to dismiss in order to preserve a legal sufficiency claim for appellate review. <u>See</u> <u>People v. Gray</u>, 86 N.Y.2d 10 (1995); C.P.L. § 470.05(2). Here, defense counsel only lodged a general objection to the proof concerning the gang assault. T. 454-55, 504.

is thus procedurally barred from review in this Court under the adequate and independent state ground doctrine[6]. In the interest of judicial economy, however, I will proceed directly to the merits of petitioner's asserted legal-insufficiency claim rather than addressing the procedural bar issue, as the underlying claim is easily resolved. See, e.g. Lambrix v. Singletary, 520 U.S. 518, 525 (1997).

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970)). Such an inquiry "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt,'" rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 318-19 (citations omitted; emphasis in original).

---

[6] The Second Circuit recognizes New York's preservation rule, C.P..L. § 470.05(2), as an independent and adequate state procedural rule barring habeas review. See, e.g., Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007); see also Johnson v. Burge, No. 04-CV-6101T, 2009 WL 3064878 (W.D.N.Y. Sept. 22, 2009) (holding that Appellate Division's ruling that legal insufficiency claim was unpreserved pursuant to § 470.05(2) was an adequate and independent state ground precluding habeas review absent a showing of cause and prejudice); Gardner v. Fisher, 556 F.Supp.2d 183 (E.D.N.Y. 2008) (same).

As the Supreme Court has instructed, this Court has reviewed the evidence in the light most favorable to the prosecution, and construed in its favor all permissible inferences arising from the evidence. There was ample evidence upon which a rational jury could have found beyond a reasonable doubt that petitioner's conduct established the essential elements of the crimes of Gang Assault in the First Degree and Assault in the First Degree.[7] The victim and Weber testified to the events that transpired on the morning of January 25, 2003. They each recalled that petitioner and two other men entered Weber's apartment with two baseball bats and a claw hammer. Then men then beat the victim for several minutes without provocation. Weber recalled that the victim had visible injuries to his eye and arm, blood covered his face, neck and chest, and that there was blood on the floor of her apartment. Weber took the victim to the hospital immediately, where he began to lose consciousness. Additionally, the jury heard testimony that the attack left the victim with "extensive" pain, a broken eye socket, a broken cheek bone, multiple contusions, lacerations to his head, a knee injury, and multiple bumps and abrasions. Trial Tr. 236-38, 339, 388-98, 419-421., 447-48.

---

[7] The elements of gang assault in the first degree are: (1) intent to cause serious physical injury to another person; (2) aided by two or more other persons actually present; and (3) causing serious physical injury to such person or to a third person. N.Y. Penal L. § 120.07. Assault in the first degree requires that the defendant (1) intends to cause serious physical injury to another person; (2) causes such injury to such person or a third person; and (3) by means of a dangerous instrument. N.Y. Penal L. § 120.10[1].

The testimony of Weber and the victim was corroborated by three photographs depicting the victim's injuries after the attack and medical records from the two hospitals where the victim was treated. Trial Tr. 326-29, 395-98, 401. Petitioner testified on his own behalf, claiming that he did not take part in the beating, and that the victim's injuries were the result of a fist-fight between the victim and Warrior. 474-76, 486-87, 490.

Questions of witness credibility belong to the fact-finder, and the arguments petitioner made on direct appeal and here were already presented to, and resolved by the jury at his trial. Accord, e.g., Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y. 2006) ("Petitioner's specific argument in support of this claim, that [the witness'] testimony was "incredible," is likewise not reviewable in habeas proceedings since credibility determinations are the province of the jury.") (citing Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal."). Neither on direct appeal nor on federal habeas is a court reviewing a sufficiency of the evidence claim permitted to revisit the factfinder's determinations as to the witnesses' credibility and veracity. E.g., United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993) ("[T]he jury is exclusively responsible for determining a witness' credibility.") (citing United States v. Roman, 870 F.2d 65, 71 (2d

Cir.), cert. denied, 490 U.S. 1109 (1989)). Here, the jury was entitled to believe the state witnesses despite that both the victim and Weber had criminal histories and were known to use drugs and/or alcohol regularly. See, e.g. Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981).

The proof presented at petitioner's trial adequately satisfies the due process standard set forth in Jackson. Habeas relief accordingly is not warranted on petitioner's claims that the first degree assault and first degree gang assault convictions were not based upon legally sufficient evidence.

**4. The Remainder of Petitioner's Claims do not Present Questions of Federal Constitutional Law**

**a. Alleged Errors by the Trial Court Are Not Cognizable on Habeas Review**

Petitioner argues that the county court made numerous errors during his trial. Namely that, (1) the court should not have admitted the victim's photograph after the assault into evidence; (2) the court should have charged a lesser-included offense to the jury; and (3) that petitioner's motion to dismiss should have been granted. Pet. ¶ 21(D)-(F). A review of the entire record supports none of these claims. Generally, alleged errors of state law are not cognizable on habeas review. See Estelle v. McGuire, 502 U.S. 62, 68 (1992). Here, petitioner has not demonstrated that the alleged errors were in fact, violative of state law. See, e.g., Brooks v. Artuz, 97 Civ. 3300, 2000 WL 1532918 at *6, 9 (S.D.N.Y.

Oct. 17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude). Nor does he argue that the errors violated an identifiable constitutional right. See Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983)("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial."); accord Rosario v. Kuhlman, 839 F.2d 918 (2d Cir. 1988). This claim is thus not properly before this Court for habeas review and is dismissed.

### b.   Actual Innocence

Petitioner claims that "newly discovered" evidence, specifically, affidavit executed by Warrior on  November 3, 2004, exonerates petitioner of responsibility for these crimes. Pet. ¶ 21(C). The Genesee County court rejected petitioner's § 440 motion on the merits, finding that petitioner failed to show that he exercised due diligence in obtaining the statement, and that, in any event, it was improbable that petitioner would have received a more favorable verdict at retrial. See Decision and Order, No. 4575, dated 4/8/2005; Resp't Ex. K.

The Second Circuit has demonstrated a reluctance to review stand-alone claims of actual innocence. "A claim 'based on newly discovered evidence ha[s] never been held to state a ground for

federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003) (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993); see also Greene v. Walker, 205 F.3d 1322 (2d Cir. 1999) (unpublished opinion). The Supreme Court in Herrera reasoned that, "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." 506 U.S. at 401. This rule is grounded in the principle that habeas courts do not sit to correct errors of fact, but rather to ensure that individuals are not imprisoned in violation of their federal constitutional rights. Herrera, 506 U.S. at 400.

The majority of district courts in this circuit have consistently held the same. See Green v. Walsh, No. 03CV00908 (GBD)(DCF), 2006 WL 2389306 at *18 (S.D.N.Y. Aug. 17, 2006) ("Although Petitioner contends that he is actually innocent of the crimes for which he was convicted, and that Smith was the true perpetrator of D.W.'s rape and assault , a stand-alone claim of actual innocence is not cognizable on habeas review.") (internal citations and quotations omitted); Ortiz v. Woods, 463 F.Supp.2d 380 (W.D.N.Y. 2006) (noting the Supreme Court's declaration in Herrera that absent an independent constitutional violation at trial, a claim of newly discovered evidence does not provide a basis for habeas relief); Bravo v. Couture, No. 98-CV-8050 (JBW),

03-MISC-0066 (JBW), 2003 WL 22284147 at *4 ("Habeas corpus review does not extend to 'freestanding claims of actual innocence.'").

Adopting the reasoning of Herrera, the Second Circuit, this Court finds that petitioner's stand-alone claim of "actual innocence" is not cognizable in this habeas proceeding, and the claim is dismissed.

### c.  Cruel and Inhumane Sentence

Petitioner claims that he is entitled to a writ of habeas corpus because his sentence is "cruel and inhumane." Pet. ¶ 21(H). The Appellate Division determined that petitioner's sentence was "not unduly harsh or severe." Taylor, 19 A.D.3d at 1100. Although petitioner's claim calls to mind the constitutional prohibition against cruel and unusual punishment contained in the Eighth Amendment, see U.S. Const. Amend. VIII, petitioner is not entitled to habeas relief on this ground.

A federal habeas court must grant considerable deference to legislatively-mandated terms of imprisonment. For that reason, "'successful challenges to the proportionality of particular sentences' should be 'exceedingly rare.'" Hutto v. Davis, 454 U.S. 370, 374 (1982) (quoting Rummel v. Estelle, 455 U.S. 263, 272 (1980)); accord Solem v. Helm, 463 U.S. 277, 290 (1983) ("Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the

discretion that trial courts possess in sentencing convicted criminals.")

Moreover, the Second Circuit has held that no federal constitutional issue is presented where the sentence is within the range prescribed by state law. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Here, petitioner's sentence is within the range prescribed by New York law, and petitioner does not claim otherwise. See N.Y. Penal L. § 70.04(3) (authorizing a twenty-five year determinate sentence for a class B felony committed by a second violent felony offender). And, although petitioner's sentence is the maximum penalty that the trial court could have imposed under New York's sentencing statute, petitioner does not argue that the sentence is "barbaric" or "disproportionate to the crime[s] committed." Solem, 463 U.S. at 284. Rather, petitioner alleges that his sentence is unfair because: (1) his sole previous violent felony offense occurred when he was eighteen years-old; and (2) he has a strong and supportive family unit, including a wife, three children, and a large extended family. Pet. ¶ 21(H); Pet'r Appellate Br. 43. This is not, however, one of the rare cases where the "reviewing court . . . [is] required to engage in an extended analysis to determine that a sentence is not constitutionally disproportionate." Solem, 463 U.S. at 290 n.16. For this reason, petitioner's sentencing claim is not cognizable on habeas review.

### d.  **Sandoval** Violation

Petitioner argues that his constitutional rights were violated by a Sandoval[8] ruling that allowed the prosecutor to question him about five prior convictions relating to various crimes, including weapon and drug possession, assault, and unauthorized use of a vehicle. Pet. ¶ 21(I); Trial Tr. 494-500.

The Appellate Division rejected petitioner's Sandoval claim as meritless: "County Court's Sandoval ruling does not constitute an abuse of discretion inasmuch as the court properly balanced the probative value of the evidence of prior crimes committed by defendant against the danger of undue prejudice to him." 19 A.D.3d at 1100.

"A claim based on an alleged Sandoval violation deals with an evidentiary question and presents an issue for habeas relief only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right."  Mastin v. Senkowski, 297 F.Supp.2d 558 (W.D.N.Y. 2003) (citing Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998)). The evidence introduced must be "so extremely unfair that its admission violates the fundamental conceptions of justice," i.e., where such evidence is "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed

---

[8] People v. Sandoval, 34 N.Y.2d 371 (1974) (a trial judge may make an advance ruling  as to the use by the prosecution of prior convictions or proof of prior commission of specific criminal, vicious, or immoral acts to impeach a defendant's credibility).

on the record without it." Dunnigan, 137 F.3d at 125 (internal
quotations omitted).

Petitioner's testimony elicited on cross-examination regarding
his prior offenses was not sufficiently material to provide the
basis for his conviction of assault and gang assault, or to remove
a reasonable doubt that would have existed on the record without
it. Petitioner's lengthy criminal record included one charge for a
crime bearing any similarity to those that he currently stands
convicted of, an assault charge from 1989. Trial Tr. 494-96. Given
that the charge preceded petitioner's trial by fourteen years, it
is unlikely that the jurors convicted him because they believed,
after hearing his cross-examination testimony, that he had a
propensity to commit assault. His testimony did serve to
demonstrate his willingness to place his own interests ahead of
society's, exemplified by his willingness to use vehicles that he
was not authorized to use, to carry dangerous weapons in public
spaces, and to repeatedly fail to appear for scheduled court
appearances. Id. at 494-500. Offered for that legitimate purpose,
the evidence concerning petitioner's criminal record cannot be said
to have violated "the fundamental conceptions of justice." See
Mastin, 297 F.Supp.2d at 593. Petitioner has thus not alleged an
error of a constitutional dimension, and this claim is dismissed.

## IV.  Conclusion

For the reasons stated above, Darrell Taylor's petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because the petitioner has failed to make a substantial showing of a denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g. Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

     **SO ORDERED.**

s/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:     January 29, 2010
           Rochester, New York